IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal No.: 22-CR-0719-WJ |
| | ) | |
| MICHAEL TAFOYA, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTION TO THE
PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM**

The United States hereby responds to Defendant Michael Tafoya's Objection to the Presentence Investigation Report and Sentencing Memorandum (Doc. 45) (the "Memorandum"). Defendant's objections to the Presentence Investigation Report ("PSR") (Doc. 37) lack merit. The Memorandum also understates Defendant's criminal history. Given Defendant's age and agents' lack of interest in any information he could provide, the United States respectfully requests that the Court accept the parties' plea agreement and sentence Defendant to 120 months of imprisonment.

**I.      SENTENCING LEGAL STANDARD**

In determining a defendant's sentence, "the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from" the Guidelines with reference to Section 3553(a). *Nelson v. United States*, 555 U.S. 350, 351 (2009). The sentencing court must make "an individualized assessment based on the facts presented" and if the court "decides that an outside Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of

the variance." *Gall v. United States*, 552 U.S. 38, 50 (2007).

Section 3553(a) prescribes that sentencing courts consider the following seven factors in fashioning defendants' sentences: (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, i.e., (a) just punishment, (b) deterrence, (c) incapacitation, and (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission statements of policy; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. *See Rita v. United States*, 551 U.S. 338, 347-48 (2007). Additionally, Section 3553(a) provides that sentencing courts should impose sentences "sufficient, but not greater than necessary to comply with" the basic purposes of sentencing stated above.

## II.      THE COURT SHOULD ACCEPT THE PLEA AGREEMENT.

The plea agreement (Doc. 36) represents the parties' considered agreement as to how to resolve this matter.  The United States respectfully asks that the Court exercise its broad discretion[1] to accept the agreement.

The agreement provides benefits to both sides.  Defendant avoids the severe penalties that come from a Guideline sentence.  The United States avoids the extensive and time-consuming litigation that would result from a full trial.  Given that the United States' witnesses would be removed from investigating new cases in Farmington to travel to Albuquerque for any hearings, this is not an insignificant burden.  The involvement of a confidential informant, and the need to protect that informant, could also complicate the litigation.

While ultimately the United States believes it would have prevailed in any suppression hearing or trial, it would have consumed significant resources. The United States also took into account the facts of the case (discussed further below) and Defendant's relative lack of importance

---

[1] *See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("A court may reject a plea in exercise of sound judicial discretion."); *United States v. Sandoval-Enrique*, 870 F.3d 1207, 1216 (10th Cir. 2017).

to any organized criminal network.   The United States thus respectfully requests that the Court accept the parties' resolution.  *See,* e.g., *United States v. Vanderwerff*, 788 F.3d 1266, 1277 (10th Cir. 2015) (collecting cases and commenting, "[b]y now it is blackletter law . . . that plea bargaining is strongly favored.").

## III.    THE 3553(a) FACTORS SUPPORT A 120-MONTH SENTENCE.

### A.    The Nature and Circumstances of the Offense

The PSR accurately reports the facts of Tafoya's offense.  *See* Doc. 39 ¶¶ 8-13.  On March 23, 2022, a confidential informant observed Defendant in possession of a large quantity of methamphetamine.  *Id.* ¶ 9.   The informant added that Tafoya was driving a Toyota.  *Id.* Farmington Police Department officers commenced surveillance in the area and quickly located the Toyota.  *Id.*  They detained Defendant as he was exiting the vehicle and patted him down to check for weapons.  *Id.* ¶ 10.  During the pat-down, officers felt two large packages concealed under Defendant's jacket.  *Id.*  A K-9 sniff resulted in a positive hit for narcotics.  *Id.*  Although officers could have searched Defendant on the spot, they instead obtained search warrant for his person, his vehicle, and his motel room.  *Id.*

During the search of Defendant's person, officers located 638.61 net grams of methamphetamine.  *Id.* ¶ 12.  During the search of Defendant's hotel room, officers found 1.2 gross grams of methamphetamine, one pill, multiple items of drug paraphernalia, multiple cell phones, syringes, and a Umarex XCP BB pistol.  *Id.* ¶ 13.

Officers in Farmington had no interest in debriefing Defendant.

### B.    The History and Characteristics of the Defendant

Defendant's criminal history began early in life, with a conviction for shooting at an inhabited dwelling or occupied building at age 16.  Doc. 39 ¶ 29.  At age 20, Defendant and several co-defendants assaulted and robbed a delivery driver.  *Id.* ¶ 31.  Defendant's earlier federal

conviction came in 1995, at age 21, when he was convicted of possession with intent to distribute methamphetamine. *See* 94-cr-0634-JEC, Doc. 33, ¶ 3.

After this conviction, Defendant almost made lasting positive changes in his life. He performed well on supervised release, completing substance abuse treatment and maintaining a job. *See* Doc. 39 ¶ 33.

Things went downhill in 2012, when Defendant was convicted of battery against a household member. *Id.* ¶ 34. By 2013, his probation had been revoked when he appeared for an appointment wearing gang attire and tested positive for methamphetamine. *Id.* at ¶¶ 34, 67 (admitting resumption of methamphetamine use in 2013). Convictions for attempt to possess a controlled substance and receiving stolen property followed in 2016. Defendant's criminal record continued more or less unbroken up to the present.

### C.    The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Provide Adequate Deterrence, and Protect the Public from Further Crimes of the Defendant

A ten-year sentence is a substantial penalty for Defendant's offense. It fully reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and furthers deterrence.

Few sane criminals would fail to be deterred by the possibility of spending ten years in federal prison, given the meagre financial rewards often involved. And the public at large will not see such a sentence as a "slap on the wrist"—particularly compared to Defendant's prior state sentences. *See, e.g.*, Doc. 39 ¶¶ 34-36.

The proposed sentence would adequately protect the public from further crimes that Defendant might commit in the future. Should the Court accept the plea agreement, and should Defendant avoid any violations or further crimes while incarcerated, Defendant will be roughly 60 years old when he is released. His term of supervised release will end at age 65. As the Court has

recognized, "age is generally a strong factor influencing the likelihood of committing crime, although the reasons for this are complex."  *United States v. Pena*, No. 2:10-CR-2138-WJ, 2018 WL 6003538, at *14 (D.N.M. Nov. 15, 2018) (quoting United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders at 3, Dec. 2017).

### D.      The Sentencing Guidelines for the Applicable Category of Offense Committed by the Applicable Category of Defendant

One of the Section 3553(a) factors that the Court must consider is the sentencing range established by the United States Sentencing Commission for the applicable category of offense committed by the applicable category of defendant.  The Supreme Court has recognized that even in the post-*Booker* world "the [Sentencing] Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise . . . .'"  *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007).  "In the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve 3553(a)'s objectives.'"  *Id.*

The United States will thus respond to Defendant's primary PSR objections.

### 1.      Preponderance Standard

The Memorandum first argues that the Court should "decide facts relevant to the question of possession under a higher standard than that of a preponderance of the evidence" because those facts "would increase a defendant's sentence under the federal sentencing guidelines."  Doc. 45 at 2.  This is not an accurate statement of the law.  *See United States v. Cassius*, 777 F.3d 1093, 1094 (10th Cir. 2015) (allowing judicial factfinding to alter guidelines range, "so long as the court does not use its own drug quantity finding to alter the defendant's *statutory* sentencing range"); *United States v. Sandoval*, No. CR 22-1010 JB, 2023 WL 5835875, at *12 (D.N.M. Aug. 29, 2023)

(Browning, J.) (collecting cases in section on "Law Regarding the Burden of Proof Required for Enhancements Under the Guidelines").

### 2.      Nature of the Weapon

The Memorandum claims that a B.B. gun, as used by Defendant, was not a dangerous weapon because it was not used in a way "in which the item might create the appearance of a dangerous weapon to others during the commission of a crime." Doc. 45 at 6. This is incorrect. A BB gun qualifies as a dangerous weapon because it is "capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1, application note 1(E)(i). This fact is clear from the definition of a "firearm" in a separate application note, which specifically states: "A weapon, commonly known as a "BB" or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm." *See* U.S.S.G. § 1B1.1, application note 1(H); *see also United States v. Padilla*, 651 F. Supp. 3d 1261, 1270 (D.N.M. 2023) (Browning, J.) (collecting cases); *United States v. Ortega*, No. CR 20-1948 JB, 2021 WL 1339415, at *5 (D.N.M. Apr. 9, 2021) (Browning, J.) (rejecting similar argument).

### 3.      Lack of Actual Possession

The Memorandum also contends that Defendant did not possess the B.B. gun because the "government has not demonstrated . . . a temporal relation nor a spatial relation to the drug offense to which Mr. Tafoya pled guilty." Doc. 45 at 3-4.

Some facts favor Defendant's argument. While the traffic stop was ongoing, a passenger vehicle arrived at the hotel and another man knocked on the door of the hotel room. Officer Burridge's report indicates that the second man was present in the room with Defendant before Defendant's departure and the resulting traffic stop.

Overall, however, Defendant's argument lacks merit.  The hotel room was registered to Defendant alone.  The B.B. gun was clearly visible on the nightstand of the hotel room, between the two beds and on top of an envelope containing Defendant's credit card.




The room contained drugs and indicia of drug trafficking, including a small amount of methamphetamine, syringes, paraphernalia, and multiple cell phones.  It also contained clear signs of Defendant's residence.  "Possession," in this context, is "possession by proximity-constructive possession."  *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1187 (10th Cir. 2004).  The Government has met its burden to show constructive possession here.

**4.     Lack of Nexus**

Finally, Defendant contends that even assuming he possessed the B.B. gun, there is "insufficient evidence" to connect it the offense of conviction.  Doc. 45 at 5-6.

Defendant ignores his own burden.  The United States "bears the initial burden of proving possession of the weapon by a preponderance of the evidence."  *United States v. Williams*, 431 F.3d 1234, 1237 (10th Cir. 2005).  Once that burden is met, Defendant must show that it is "clearly

improbable the weapon was connected with the offense." *United States v. Graham*, 314 F. App'x

114, 121 (10th Cir. 2008).  An unsupported assertion that there is "insufficient evidence" is not

enough to make that showing.  And a B.B. gun that could appear to be a firearm, particularly at

night, in a hotel room full of drug paraphernalia is not analogous to an unloaded hunting rifle in

the closet.

> **E.     The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who Have Been Found Guilty of Similar Misconduct**

The United States acknowledges that the agreed-to sentence of imprisonment is a

significant variance from the applicable Guideline range.  Under the unique circumstances of this

case, however, such a variance is justified.  The applicable sentencing range of 188 to 235 months

would be greater than necessary to comply with the basic purposes of sentencing under 18 U.S.C.

§ 3553(a).

> **F.     The Need to Provide Defendant with Needed Supervision**

The plea agreement leaves the "remaining components of the Defendant's sentence,

including but not limited to any fine or restitution and the length and conditions of supervised

release," to the Court's discretion.  The Court should impose at least five years of supervised

release.

Defendant argues that he will "continue to pay for this crime when he is released from BOP

to supervision."  Doc. 45 at 8.  The Court should not impose supervised release as a form of

punishment for Defendant's offense.  Instead, supervision should provide the sort of structure and

accountability it provided during Defendant's earlier term of sobriety and successful employment.

*See* Doc. 45 at 7 (citing Defendant's certifications and work history); Doc. 39 ¶ 33 ("U.S. Probation

records indicate the defendant did well on supervision, had no compliance issues, maintained

employment, and completed substance abuse treatment.").

A term of supervised release—with strict penalties for noncompliance—could ensure that Defendant makes progress and benefits from further substance abuse counseling. "[T]he [Sentencing Reform Act] instructs courts, in deciding whether to impose probation or supervised release, to consider whether an offender could benefit from training and treatment programs." *Tapia v. United States*, 564 U.S. 319, 330 (2011). Without any supervision, Defendant will not take rehabilitation seriously.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court accept the plea agreement and impose a sentence of 120 months of imprisonment and at least 60 months of supervised release.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

***/s/ Electronically filed November 13, 2023***
DAVID B. HIRSCH
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM  87103
(505) 224-1473

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

***Electronically Filed 11/13/23***
DAVID B. HIRSCH
Assistant U.S. Attorney